IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KRYSTAL DAWN CHASE, | CV 20-168-BLG-KLD |
| Plaintiff, | |
| vs. | ORDER |
| ANDREW SAUL, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq.

I.    **Procedural Background**

Plaintiff filed an application for disability insurance benefits and supplemental security income on June 20, 2017, and August 25, 2017, alleging disability since March 15, 2017, based on physical and mental impairments. (Doc. 10 at 24.) Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated November 18, 2019, the agency's final decision for purposes of judicial review. Jurisdiction vests with

1

this Court pursuant to 42 U.S.C. § 405(g).

## II.   <u>Legal Standards</u>

### a. Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th

2

Cir. 2006)).

### b.  Disability determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to

4

engage in past work, the burden shifts to the Commissioner at step five to establish

that the claimant can perform other work that exists in significant numbers in the

national economy, taking into consideration claimant's residual functional

capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and

416.920(4)(v). The ALJ may satisfy this burden through the testimony of a

vocational expert or by referring to the Medical-Vocational Guidelines set forth in

the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this

burden, the claimant is not disabled.

### III.   <u>Discussion</u>

The ALJ followed the five-step sequential process in evaluating Plaintiff's

claim. At step one, the ALJ found Plaintiff meets the insured status requirements of

the Social Security Act through December 31, 2022. The ALJ further found that

Plaintiff had not engaged in substantial gainful activity since March 15, 2017, the

alleged onset date. (20 CFR 404.1571 *et seq*.) (Doc. 10 at 26).

At step two, the ALJ found that Plaintiff had the following severe impairments:

(1) Legg-Calve-Perthes disease (status post bilateral total hip arthroplasty), (2)

epicondylitis, and (3) neck strain with cervicogenic headaches. (Doc. 10 at 27).

She further noted that these impairments limit the ability of Plaintiff to perform

some basic work activities. (Doc. 10 at 27). The ALJ noted minor impairments

such as depressive disorder (with anxiety) did not cause more than a minimal

limitation to Plaintiff's ability to perform basic mental work activities and are not severe. (Doc. 10 at 27).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 10 at 29).

The ALJ found Plaintiff has the residual functional capacity to perform a range of sedentary work as follows:

> She can perform sedentary work except she can lift carry, push, or pull less than 10 pounds frequently and up to 10 pounds occasionally. She can stand or walk 4 hours of an 8-hour workday and sit 6 hours of an 8-hour workday. She is limited to not more than occasional operation of foot controls with the bilateral lower extremities. She can never climb ladders, ropes, or scaffolds. She can only occasionally climb ramps and stairs. She can frequently balance but only occasionally stoop, kneel, crouch, or crawl. She can have no exposure to unprotected heights, moving mechanical parts, or other workplace hazards. She can have no exposure to extreme cold or vibration. The claimant would need to alternate positions. She can stand or walk not more than 20 minutes at a time and then would need to sit 20 minutes before walking. Sitting is limited to 30 minutes at a time, and then she would need to stand to stretch at the workstation for 2 minutes before returning to the sitting position.

(Doc. 10 at 29). At step four, the ALJ determined Plaintiff could not perform past relevant work as an asphalt laborer, a cashier checker, a cashier supervisor, a credit clerk, a vault teller, or a nurse's aide. (Doc. 10 at 35). Proceeding to step five, the ALJ found based on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that Plaintiff could

perform, including food cashier, check cashier, and gambling cashier. (Doc. 10 at 36).

Plaintiff argues the ALJ decision is not supported by substantial evidence and raises three main issues on appeal. First, Plaintiff argues the ALJ improperly evaluated the medical opinions when evaluating whether Plaintiff had a severe mental impairment at step two. Second, Plaintiff contends the ALJ failed to consider SSR 16- 3p(2)(d)(5) and SSR 96-8p, which requires the ALJ to consider the effects of Plaintiff's medical treatments, specifically the frequency and duration of treatment and disruption to routine, and improperly discounted treating provider testimony and Plaintiff's own testimony when determining Plaintiff's RFC. Finally, Plaintiff argues the ALJ erred in failing to incorporate all her relevant limitations, including an evaluation pursuant to SSR 96-8p and 16-3p, into the vocational consultant's hypothetical question.

### a.  The ALJ's Mental Health Findings

Plaintiff argues the ALJ inadequately considered the medical opinion evidence concerning her mental health, resulting in an improper finding that Plaintiff's mental impairments are non-severe.

The administrative record contains several medical opinions and records relevant to Plaintiff's functioning during her alleged period of disability. Plaintiff challenges the ALJ's evaluation of medical source opinions provided by a DDS

physician and Plaintiff's therapist. (Doc. 12 at 14). Plaintiff appears to argue that the ALJ would have found her depression severe at step two if she would have properly incorporated these findings into her opinion. The Commissioner counters that the ALJ reasonably evaluated the medical opinions and other medical evidence in the record. The Commissioner additionally argues that to the extent the ALJ did err in her findings, any such error is harmless.

When evaluating a disability claim, the ALJ must provide a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 102 (9th Cir. 2012). The Ninth Circuit has repeatedly held that an ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or examining physician's uncontradicted opinion, and specific and legitimate reasons for rejecting a treating or examining physician's contradicted opinion. See *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). The ALJ could meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675.

For all claims filed after March 27, 2017, the Social Security Administration has amended the rules regarding the evaluation of medical opinion evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical

Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Under the new regulations, the

ALJ "will no longer give any specific evidentiary weight to medical opinions; this

includes giving controlling weight to any medical opinion." Revisions to Rules

Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg.

5844, at 5867-68 (Jan. 18, 2017). *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a)

(2017). These regulations do away with the traditional hierarchy between treating,

examining, and non-examining physicians, and instead direct the ALJ to consider

all medical opinions and prior administrative medical findings, and evaluate their

persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

Those factors include supportability, consistency, relationship with the claimant,

specialization, and "other factors that tend to support or contradict a medical

opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c),

416.920(c). The two most important factors are supportability and consistency. 20

C.F.R. §§ 404.1520c(a), 416.920(a).

The regulations require the ALJ to articulate how persuasive she finds all of the

medical opinions and prior administrative medical findings and set forth specific

"articulation requirements" for the ALJ's evaluation of the medical opinion

evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b). When one medical source

provides multiple opinions, the ALJ is not required to articulate how she

"considered all of the factors for all of the medical opinions" and will instead

articulate how she considered those opinions "together in a single analysis using the factors" listed above. 20 C.F.R. §§ 404.1520c(b)(1), 416.920(b)(1). Because supportability and consistency are the most important factors, the ALJ must explain how she considered these factors in the decision. Generally, the ALJ is not required to explain how she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2). However, when the ALJ finds that two or more medical opinions are equally well-supported and consistent with the record but are not exactly the same, she must articulate how she "considered the other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920(b)(2).

Because Plaintiff filed her claim for disability on June 19, 2017 and August 25, 2017, respectively, the revised regulations apply in this case. The Ninth Circuit has not yet addressed whether the new regulations meaningfully change how courts are to review the adequacy of an ALJ's reasoning, and whether an ALJ is still required to provide "clear and convincing" or "specific and legitimate" reasons for rejecting a treating or examining medical source opinion. See e.g. *Sergio L. v. Kijakazi,* 2021 WL 549441, at * 5 (C.D. Cal. Nov. 22, 2021); *Brandee M. v. Saul*, 2021 WL 2781803, at *3 (C.D. Cal. July 1, 2021).

Nevertheless, while the new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a

medical opinion unpersuasive. *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020). The "new regulations still require the ALJ to explain his or her reasoning to specifically address how he or she considered the supportability and consistency of the medical opinion." *Brandee M.*, 2021 WL 2781803, at *3 (citing 20 C.F.R. §§ 404.1520c, 416.920c).

Thus, the Court must determine whether the ALJ properly evaluated the medical opinions using the factors set forth above. See e.g., *Ryan L.F. v. Commissioner of Social Security,* 2019 WL 6468560 *3-4 (D. Or. Dec. 12, 2019).

       i.     Dr. Tristan Sophia, Psy. D.

In her brief, Plaintiff argues that the ALJ erred by not categorizing her depression as an impairment at step two. Plaintiff appears to argue this by implying the ALJ discounted the opinion of Dr. Tristan Sophia, Psy. D. However, a review of the ALJ's decision reveals the exact opposite: the ALJ considered and accepted the findings of Dr. Sophia and incorporated those findings into her decision.

The ALJ considered the findings of Dr. Sophia and discussed them in her decision. The ALJ discussed Dr. Sophia's examination notes at length both when assessing the severity of Plaintiff's mental disorders, and when considering how they fit into Plaintiff's RFC. Specifically, the ALJ noted that Dr. Sophia found Plaintiff's "depression and anxiety [does] not seem to be directly inhibiting her ability to engage in work-related activity, but her decreased attention/

concentration stemming from her depression and anxiety definitely will impair her effectiveness." (Doc. 10 at 28 citing pg. 674).  Dr. Sophia found Plaintiff had no difficulty interacting or communicating but will be challenged in a group setting. (Doc. 10 at 673-74). He further found Plaintiff will be challenged when managing her psychological symptoms, get distracted, and have trouble adapting to change, but will not have challenges making plans and maintaining appropriate workplace behavior. (Doc. 10 at 674).

Although Dr. Sophia noted that Plaintiff's mental impairments will inhibit her working abilities, the overall findings do not show that they preclude working because Plaintiff has only mild limitations from her anxiety and depression. (Doc. 10 at 22). Further, the ALJ and Dr. Sophia both noted that Plaintiff's prescribed Lexapro was helping treat her symptoms. (Doc. 10 at 28). The Court finds the ALJ reasonably and permissibly relied on the findings of Dr. Sophia to conclude Plaintiff was not disabled.

ii.    LCSW Yvonne Benson

In her brief, Plaintiff notes that LCSW Yvonne (Eve) Benson assessed Plaintiff with general anxiety disorder, major or persistent depression disorder and "She specifically noted Krystal was unable to work due excessive anxiety and worry which was difficult to control." (Doc. 12 at 9-10). LCSW Benson did diagnose Plaintiff with anxiety and depression. (Doc. 10 at 499). Additionally, she

12

noted that Plaintiff was applying for Social Security benefits to alleviate financial anxiety but did not address if Plaintiff's diagnosis would prohibit her from working. (Doc. 10 at 499). LCSW Benson further recommended therapy for Plaintiff that revolved around parenting, relationships, and discipline to help her cope with her anxiety. (Doc. 20 at 499-500). As noted by the ALJ, most of Plaintiff's counseling notes from LCSW Benson do not document objective signs or findings regarding problems with functioning under the Paragraph B criteria for mental disorders. (Doc. 10 at 28).

Both Plaintiff and the Commissioner draw attention to a letter from LCSW Benson from October 2017. In the letter LCSW Benson discusses how Plaintiff's symptoms have affected her ability to work. (Doc. 10 at 553). LCSW Benson stated the symptoms of Plaintiff's mental disorders cause significant distress in social and occupational environments. (Doc. 10 at 553). This letter is inconsistent with the findings of Dr. Sophia, as well as the other clinical findings from LCSW Benson's prior treatment notes from her sessions with Plaintiff. Most of the treatment notes discuss family therapy and ways to cope with Plaintiff's children. (Doc. 10 at 499-500, 967-977). Except for the letter, there is scant evidence that Plaintiff's mental impairments would cause her to be unable to work. The Court finds that the ALJ appropriately relied on LCSW Benson's notes and used them for a germane purpose to show Plaintiff's depression was not severe under the

regulations.

> iii.     Mental Health Diagnosis

Plaintiff appears to argue a diagnosis of depression leads to an automatic severe impairment under the regulations.  Even if the ALJ had erred by improperly disregarding Dr. Sophia's opinion and finding germane reasons for discounting LCSW Benson's treatment notes, any such error would be harmless.

Plaintiff's argument concerning these two providers is based on the ALJ's purported failure to identify her mental impairments as severe at step two. Step two is for screening purposes and a finding of non-severity does not relieve the ALJ from further considering an impairment when determining the residual functional capacity. 20 C.F.R. § 404.1545(1)(5)(i); *Smolen*, 80 F.3d at 1290 (The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims.").

The ALJ found Plaintiff's mental impairments were medically determinable under the regulations. (Doc. 10 at 27). The ALJ additionally found Plaintiff had severe physical impairments and continued with the disability evaluation. In that evaluation, the ALJ considered severe and non-severe limitations caused by Plaintiff's impairments, including mental health limitations. (Doc. 10 at 27, 28, 29, 33, 34). The ALJ specifically considered Plaintiff's social functioning, understanding, memory, concentration, and self-management when formulating

her residual functional capacity. (Doc. 10 at 27-34.) *See Baldwin v. Astrue*, 2010 WL 1946902 (C.D. Cal. May 10, 2010) (finding an ALJ's error at step two to be harmless where "the ALJ accounted for the symptoms and limitations allegedly caused by her [impairment] in [the] residual functional capacity at step four"); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (Alleged error at step two was harmless where step two was decided in Plaintiff's favor). Because the findings and opinions of Dr. Sophia and LCSW Benson are consistent with those of the ALJ, there is no contradiction or discrepancy to resolve, and the ALJ properly considered the opinion testimony when determining Plaintiff's depression was not a severe impairment.

**b. Subjective Symptom Testimony**

Plaintiff argues the ALJ ignored her own regulations by failing to analyze the mechanics of treatment to discount Plaintiff's testimony of her limitations. She also states the ALJ did not provide specific, clear and convincing reasons to reject her testimony and that if the ALJ had considered the mechanics of treatment under SSR 96-8 Plaintiff would have been found disabled.

It is not clear to the Court whether Plaintiff's argument is that the number and frequency of treatment appointments supports a finding of more severe limitations or if her argument is simply that the ALJ improperly rejected her testimony. The consideration of the effects of Plaintiff's medical treatment is a

different issue than analysis of her testimony, and the Court will discuss them separately.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause his alleged symptoms.  The ALJ then found that her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record.  (Doc. 10 at 31).

At her administrative hearing, Plaintiff testified that she cannot work more than three hours without lying down for approximately four hours. (Doc. 10 at 50, 55). She stated her pain increases with all activities and she has not seen any

16

improvement from her bilateral hip replacements. (Doc. 10 at 61, 64). She further testified that her depression makes it impossible to form relationships and she would "just like to lie there and rot." (Doc. 10 at 64).

The ALJ provided a detailed summary of the medical evidence, and discounted Plaintiff's testimony as to the severity of her physical and mental impairments for various reasons. With respect to her physical limitations, the ALJ noted that Plaintiff had good progress and responded well to physical therapy and pain medication after her bilateral hip replacements. (Doc. 10 at 31). This is consistent with Lisa Guthrie, NP's record that states Plaintiff was doing well after surgery and was making progress in physical therapy. (Doc. 10 at 352). Plaintiff's physical therapist noted progress, including a decrease in soreness. (Doc. 10 at 614, 616). Although Plaintiff complained of soreness during physical therapy, she could walk up to three miles before being discharged. (Doc. 10 at 687). The record is not void of Plaintiff's hardships when healing such as soreness and limited mobility, but she did do well in physical therapy and was not discharged from physical therapy until she her treatment goals. (Doc. 10 at 601, 677-78). These findings are consistent with Dr. Dean Sukin, MD's post operative treatment records which illustrate a decrease in pain and an increase in mobility. (Doc. 10 at 802-03). After experiencing post-surgical left hip pain, Plaintiff underwent cortisone injections, which helped alleviate her symptoms. (Doc. 10 at 803, 807).

These records are inconsistent with Plaintiff's allegations of disabling pain after her hip replacements.

The ALJ further discounted Plaintiff's testimony by demonstrating that she benefitted from antidepressant medications. (Doc. 10 at 337). Additionally, Plaintiff's treatment notes from LCSW Benson lack discussion or mention of difficulties concentrating or loss of function. Most of the treatment records revolve around family therapy, and do not mention Plaintiff's physical or mental issues. The Court finds the ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony regarding her physical and mental health symptoms.

### c.  Consideration of treatment

Plaintiff argues the ALJ improperly failed to analyze her case under SSR 96-8, which requires the ALJ to consider the effects of the frequency and duration of Plaintiff's medical treatment on the residual functional capacity.  Plaintiff does not argue that any medical providers opined that she would be absent from work for any specific amount of time due to her impairments or her treatment; instead, Plaintiff simply notes the number of treatments per year from 2017-2019 and concludes that it establishes Plaintiff would consistently be absent from work and is entitled to benefits.  (Doc. 12 at 17-18). The Court notes that during these years Plaintiff received her bilateral hip replacements and had many appointments and

physical therapy stemming from those procedures. It is unclear whether the frequency of Plaintiff's appointments would continue to lessen.

The RFC must be based on all relevant evidence, such as "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996). Failing to consider the effect of Plaintiff's treatment needs is reversible error. *Edmunds v. Kijakazi*, 2021 WL 4452762, *6 (D. Mont. September 29, 2021). When a plaintiff "has presented evidence sufficient to establish the possibility that the frequency of [his] medical appointments may inhibit [his] ability to work on a 'regular and continuing basis', the Court should remand to the ALJ for development in the record and the appropriate consideration. *Bourcier v. Saul*, 856 Fed. Appx. 687, 691 (9th Cir. 2021). However, frequency of appointments alone cannot be a disabling medical impairment. *Goodman v. Berryhill*, 2017 WL 4265685, * 3 (W.D. WA. September 25, 2017). Instead, to be disabling, there must be evidence that the frequency of the treatment is necessitated by the Plaintiff's medical condition and that is substantiated by the evidence. *Goodman*, * 3. The ALJ should also consider whether Plaintiff could schedule medical appointments outside of working hours or grouped in such a way that he would not be precluded from working. *Goodman*, * 3. Finally, the ALJ should also consider whether the

19

need for the number of appointments would be ongoing or would subside. *Bourcier*, 856 Fed. Appx. At 691.

In this case, the vocational expert testified that being off-task for more than 15% of the workday or absent two days per month would preclude all work in the national economy. (Doc. 10 at 75). The ALJ made no findings regarding the frequency of Plaintiff's medical appointments, the ability to schedule outside working hours, or the potential that the frequency would be ongoing.  Because Plaintiff's treatment history demonstrates the potential of exceeding those thresholds, the ALJ erred in failing to consider or discuss Plaintiff's treatment needs when determining Plaintiff's RFC.

### d.  Vocational Expert

Plaintiff argues the ALJ erred by failing to incorporate all of her impairments into the hypothetical question presented to the vocational expert. Hypothetical questions posted to the vocational expert must set out all the limitations and restrictions of the claimant.  *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988).   "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'"  *Magallanes,* 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the

vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

The Court has determined the ALJ did not adequately consider Plaintiff's treatment needs in relation to Plaintiff's RFC. This error may have affected the ALJ's hypothetical, and in turn, undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

## IV.   Remand

Plaintiff requests the Court remand this matter for an award of benefits. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ should reconsider whether Plaintiff can perform work found in the national economy on a regular and continuing basis, based upon a hypothetical that incorporates all of Plaintiff's impairments and limitations supported by the record.

//

**V.**    <u>**Conclusion**</u>

For the reasons discussed above,

IT IS ORDERED that the Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 18th day of March, 2022,

Kathleen L. DeSoto
United States Magistrate Judge